**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MINERVA HERNANDEZ,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.  08 CV 3290** |
| | ) | |
| **BOARD OF EDUCATION OF THE** | ) | **Judge Hart** |
| **WAUKEGAN COMMUNITY UNIT** | ) | |
| **SCHOOL DISTRICT NO. 60, KAREN** | ) | **Magistrate Judge Cole** |
| **CARLSON, FERNANDO SHIPLEY, JEFF** | ) | |
| **MCBRIDE, MARVIN REDDICK, and** | ) | |
| **ANITA HANNA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### SECOND AMENDED COMPLAINT

Plaintiff Minerva Hernandez, by her attorneys, complains against Defendants Board of Education of the Waukegan Community Unit School District No. 60 (the "Board"), Karen Carlson, Fernando Shipley, Jeff McBride, Marvin Reddick, and Anita Hanna as follows:

### INTRODUCTION

1.      This is an action for violations of Minerva Hernandez' civil rights.  Plaintiff, a Latina woman, was a long-time Parent Facilitator employed by the Board.  As the Parent Facilitator, Hernandez worked for the English Language Learner's Program, a program for students for whom English was a second language.  As the Parent Facilitator, her job primarily consisted of preparing, developing, and promoting programs and parent advisory committees for parents of students in the program.  In addition, Hernandez also acted as an interpreter between the Board and parents of students in the program.

2.      In or around the end of 2002, the racial make-up of the Board changed from a Caucasian majority to an African-American majority.  Shortly after the election, one of the newly elected African-American Board members stated at an open Board meeting that "our time has come," referring to the new African-American majority.  Subsequently, the Board

implemented a policy and/or pattern and practice of racial discrimination against non-African-Americans in general and Hispanics in particular.

3.     Defendants discriminated against Hernandez on account of her race and national origin, created a hostile work environment, and retaliated against her when she spoke out about the discrimination.  Defendants verbally attacked Hernandez, or allowed her to be verbally attacked, during Board and other meetings while Hernandez was performing her duties as Parent Facilitator.  One of the Board members even stated, referring to Hernandez, that "we have to get rid of that brown bitch."

4.     When Hernandez spoke out about defendants' unlawful discrimination, defendants breached her employment contract by demoting her to a much less desirable position. After Hernandez indicated that she was planning to file a charge of discrimination with the Equal Employment Opportunity Commission, she was fired.

5.      This action seeks redress for defendants' violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, 42 U.S.C. § 1981, and 42 U.S.C. § 1983, and for the breach of Hernandez' employment contract.

## PARTIES

6.     Plaintiff Minerva Hernandez is an individual currently residing in San Antonio, Texas.

7.     Defendant Board of Education of the Waukegan Community Unit School District No. 60 (the "Board") is the board of education for a school district providing elementary and secondary (high school) services.  Waukegan Community Unit School District No. 60's (the "District") boundaries roughly encompass the City of Waukegan, Illinois.

8.     Defendant Carlson is the former Associate Superintendent of the District and defendants Shipley, McBride, Reddick, and Hanna were four of the seven members of the Board during the relevant time period.  All four former Board member defendants are black (African-

2

American).  Carlson, Shipley, McBride, Reddick, and Hanna are referred to herein collectively as the "Individual Defendants."

## JURISDICTION AND VENUE

9.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1981, 1983, and 2000e-5(f)(3).

10.      On or about July 14, 2006, and May 9, 2007, Hernandez filed charges of discrimination against the Board with the United States Equal Employment Opportunity Commission ("EEOC").  Hernandez' charges were cross-filed with the Illinois Department of Human Rights.

11.      On March 5, 2008, the EEOC issued Hernandez a notice of right-to-sue on both of her charges.  True and correct copies of the right-to-sue letters are attached hereto as Exhibits A and B.  Hernandez received both right-to-sue letters on March 11, 2008.  Hernandez' Title VII cause of action was filed within 90 days of receipt of her notice of right-to-sue.

12.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(a) because all events giving rise to Hernandez' claims occurred within this district, and, at all relevant times, Hernandez and the Individual Defendants were residents of this district and the defendant Board was located in this district.

## NATURE OF CLAIM

**A.      Hernandez' Background**

13.      Hernandez was employed by the Board from 2000 until July 2006.  During that time, Hernandez held various positions and worked at numerous locations within the District.

14.      Hernandez was employed pursuant to contracts with the Board as a Parent Facilitator from February 20, 2002, until July 25, 2006.  Prior to June 2005, Hernandez worked out of the Parent Information and Support Center ("PISC").  As a Parent Facilitator, Hernandez, among other responsibilities, developed programs for parents in the English Language Learner's

Program, facilitated parent meetings, developed and supported two Parent Advisory Committees, taught Active Parenting and Parents as Teachers seminars, represented the PISC at community meetings and events, organized a parent leadership program, and acted as an interpreter between the Board and the parents of students for whom English was a second language.

15.     While employed by the Board, Hernandez, a Latina woman, was openly and actively involved in many Hispanic activities and causes.  For example, she was the administrator for the Waukegan National Hispanic Institute Youth Debate Team, a member of Holy Family Parish -- a prominent and predominantly Hispanic Catholic parish in Waukegan -- a regular volunteer coordinator of the Mexican Booth at the Cooke Magnet Elementary School's annual cultural festival, and a member of the Coalition Latinos Unidos de Lake County -- a Hispanic professional organization.

**B.     The Board's History**

16.     Prior to 2003, the majority of the seven-member Board was comprised of Caucasians.  In the fall of 2002, prior to his election to the Board, Shipley and Reverend Robert Evans, an African-American community activist, made racial slurs at a Board meeting regarding the primarily Caucasian make-up of the Board.  Evans and Shipley were involved with the Waukegan, North Chicago and Zion Coalition for Better Government (the "Coalition").  The Coalition frequently raised issues regarding the racial makeup of the District's administration and school programs.  Evans was the Coalition's designated representative for the District. Evans frequently stated that his agenda, on behalf of the Coalition, was to get African-Americans into positions of power, particularly in the District.

17.     The Board's racial make-up changed in or around the end of 2002.  After a Board election, the Board consisted of four African-Americans (McBride, Shipley, Reddick, and Hanna) and three Caucasians.

18.     After the African-American members obtained a majority, the Board implemented a policy and/or pattern and practice of racial discrimination in favor of African-Americans to the detriment of other racial groups, consistently voting along racial lines.  After the election, McBride stated in an open Board meeting that now that there was a majority of "black" Board members, "our time has come."  Hanna made statements in an open Board meeting that she did not believe the District should have to educate undocumented Hispanic students, even though she had been advised by the Board's lawyers that it was required by law.  Evans made statements at various Board meetings regarding alleged racial imbalances in staff demographics, the need for the District staff to proportionately reflect the racial composition of the District, and the need to fire a particular white administrator.  Evans further asserted that "it ain't no fun when the rabbit got the gun," referring to the then-African-American majority on the Board.

**C.     Defendants' Discrimination Against Hernandez**

19.     Beginning in or around March 2005, defendants began discriminating against Hernandez because of her race and ethnicity.

20.     On or about March 22, 2005, Hernandez attended a Board meeting where she interpreted for several Spanish-speaking parents so that they could address the Board, as she regularly did at the Board's request.  During the meeting, certain Board members, including Shipley and Reddick, accused Hernandez of organizing Hispanic parents against African-American administrators.  Shipley, Reddick, McBride, and Hanna (the four African-American members of the Board) became upset that Hernandez was interpreting for the Spanish-speaking parents.  Evans then instructed Hernandez to get "her people" out of the meeting and Reddick reiterated the instruction.  Evans and Reddick were referring to the Hispanic parents who had attended the Board meeting to voice their issues and concerns.

21.     On or about March 24, 2005, Carlson -- one of Hernandez' supervisors -- asked Hernandez to join a meeting of the PISC Steering Committee that was already in session.

Normally, Hernandez did not attend such meetings because she was a staff member, not an administrator. However, Carlson asked Hernandez to join the meeting at Harlene Shipley's request. Unbeknownst to Hernandez, Carlson had also invited Evans, a non-member of the Steering Committee, to attend the meeting. During the Steering Committee meeting, Evans verbally attacked Hernandez for more than an hour. He accused Hernandez of organizing Hispanic parents against the African-American school principals. He also claimed that Hernandez was serving only Hispanics and that she had to be stopped. Evans made numerous racial accusations against Hernandez during the meeting. Carlson was the only District-level administrator at the meeting. Carlson was also the highest-ranking PISC administrator at the meeting. Carlson remained silent during Evans' tirade against Hernandez and Carlson made no attempt to stop Evans' harassment. After the Steering Committee meeting, Carlson told Hernandez that she had invited Evans and Hernandez to the meeting so that Evans could "blow off some steam."

22.     On or about September 23, 2004, during a meeting of the Board's Committee for Special Education, McBride announced that he felt African-American parents were not being served as well as Hispanic parents at the PISC. He declared that he wanted an African-American Parent Center to be developed, with staff that was in touch with the African-American community. McBride further noted that none of the PISC's current staff was African-American. He expressed his understanding that the PISC served only Hispanic parents. Staff present at the meeting explained that the PISC programs were funded by and geared towards English Language Learners, which did not include all Hispanics nor exclude non-Hispanics. McBride reiterated his desire for an African-American Parent Center to serve African-Americans exclusively.

23.     In the fall of 2004, Carlson directed the PISC to seek funding to develop a leadership program for parents of the bilingual program. The program was developed by Hernandez, who arranged for training sessions led by a leadership trainer, Astrid Suarez, selected

by Carlson.  As part of the program, parents regularly attended Board meetings, sought meetings

with administrators, and expressed their concerns to administrators.  After these parents sought

English-to-Spanish interpretation at Board meetings, publicly questioned the propriety of

suspensions and expulsions of Hispanic bilingual students, and expressed to the Deputy

Superintendent and Associate Superintendents specific grievances with their departments,

Carlson told Hernandez to direct the parents to stop.  When Hernandez told Carlson that the

parents were acting independently of her, other than the training that Carlson had implemented,

and that Hernandez did not even know many of the parents, Carlson told Hernandez that

Hernandez could control them and that she should.  Carlson directed Hernandez to have the

parents focus their attacks on the African-American Deputy Superintendent, and not on Carlson.

24.     Throughout the 2004-2005 school year, defendant Board members and Evans

made various racial comments at Board meetings.  As he was leaving one Board meeting,

Shipley referred to Hernandez and stated:  "we have to get rid of that brown bitch."

**D.     The Recission of Hernandez' First Termination and Her New Employment
        Contract**

25.     On or about July 6, 2005, Hernandez received a letter terminating her

employment effective August 8, 2005.  A true and correct copy of the July 6, 2005, termination

letter is attached hereto as Exhibit C.  The termination letter stated that the Board had decided

that Hernandez' position at the PISC was "being reduced due to a decision to discontinue the

number of personnel providing community services through the PISC during School Year 2005-

2006."

26.     On or about July 15, 2005, Hernandez received a letter from the Superintendant of

Schools "revoking" the July 6, 2005, termination letter.  A true and correct copy of the July 15,

2006 letter is attached hereto as Exhibit D.

27.     On or about August 11, 2005, Hernandez and the Board entered into an

employment contract for the 2005-2006 school year.  A true and correct copy of the employment

contract is attached hereto as Exhibit E.  Pursuant to the contract, Hernandez was to continue her work as Parent Facilitator.

      **E.**     **The Breach of Hernandez' New Employment Contract and Her Second Termination**

28.     On August 16, 2005, the first day of the 2005-2006 school year, Hernandez began work pursuant to her employment contract.  Unlike previous years, however, the assignments Hernandez received from the director of her department were primarily clerical and secretarial in nature.

29.     On or about September 8, 2005, Carlson gave Hernandez a letter from the District's Associate Superintendent for Human Resources, dated August 25, 2005.  The letter purported to revoke Hernandez' employment contract.  The letter further stated that Hernandez was being demoted to a less desirable position.  A true and correct copy of the August 25, 2008 letter is attached hereto as Exhibit F.

30.     At a subsequent meeting with Carlson, Hernandez was given three job options. Each of the proposed positions was less desirable, involved fewer responsibilities, duties, and skills, and offered lower pay than the Parent Facilitator position to which Hernandez was entitled under her employment contract.

31.     On or about September 9, 2005, Human Resources informed Hernandez that Carlson had decided that Hernandez' new salary would be lower than what was required under her employment contract.

32.     On or about September 19, 2005, the Board asked Hernandez to sign a "revised" contract for which she would receive less pay than she was entitled to under her employment contract.  Hernandez did not sign the "revised" contract.

33.     Needing her job, Hernandez continued to work for the Board and was paid less than she was entitled to under her employment contract.  During this time, Hernandez was assigned menial duties.

34.     On October 5, 2005, Hernandez' attorney sent the Board a letter informing the Board that he had been retained by Hernandez with regard to claims against the Board arising from the Board's breach of Hernandez' employment contract and acts of discrimination based on her race, color, and national origin.

35.     On or about December 6, 2005, while on medical leave, Hernandez received a letter from the Associate Superintendent of Schools recommending her termination. Hernandez' termination was purportedly recommended for insubordination based on events that took place at the PISC on October 6, 2005. However, the reason for recommending Hernandez' termination was baseless and merely a pretext to cover the Board's discriminatory motives.

36.     On or about February 14, 2006, the Board held a hearing concerning Hernandez' termination. The hearing lasted less than an hour and several Board members arrived late and did not hear much of the testimony. Hernandez and her attorney were not permitted to call all of the witnesses they had designated prior to the hearing.

37.     On or about July 15, 2006, Hernandez filed a charge of discrimination against the Board with the EEOC.

38.     On or about August 2, 2006, Hernandez' attorney received a letter from the Board informing Hernandez that her employment was terminated effective July 25, 2006.

39.     Defendants terminated Hernandez' employment under the pretext of insubordination, which has adversely affected her ability to find other employment. Her suspension and termination were done in such a way as to make it generally known, even among non-District community members, that Hernandez was terminated for alleged bad behavior.

40.     During her employment, the Board and the Individual Defendants regularly made decisions on the basis of race and ethnic background. The decisions to suspend and terminate Hernandez, the decision to breach Hernandez' contract, the promotion and allowance of a hostile

work environment, and other such decisions with respect to Hernandez were motivated by Hernandez' race and ethnic background.

41.     The Board and the Individual Defendants saw Hernandez as a leader and representative of Hispanics in the District and singled her out for discrimination for that reason. Not only was she Hispanic, and therefore perceived by defendants to have interests in tension with interests of African-Americans in the District, but defendants accused her of representing Hispanics opposed to the Board's attempts to favor African-Americans over other racial and ethnic groups. The Board and the Individual Defendants also retaliated against Hernandez for her reports of unlawful or improper activity within the District and for her refusal to participate in their race-motivated agenda. The Board and the Individual Defendants further retaliated against Hernandez and punished her for complaints made by Hispanic parents about the Board's allegedly unlawful behavior.

**COUNT I**
**(Title VII Violation against the Board – Racial Discrimination)**

42.     Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 41 above.

43.     Hernandez, as a Hispanic woman, belongs to a protected class.

44.     Hernandez was qualified for the position of Parent Facilitator and, in fact, held that position for several years.

45.     The actions of the Board, as described herein, are unlawful employment practices in that they likely have the effect and did have the effect of discriminating against, depriving, and tending to deprive equal employment to, and otherwise adversely affecting Hernandez because of her race and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* The Board's actions were motivated by discriminatory intent.

46.    The Board engaged in continuous and ongoing discriminatory acts against Hernandez from around March of 2005 until it subsequently fired Hernandez on or about July 25, 2006.

47.    The Board's actions caused and continue to cause Hernandez to suffer humiliation, embarrassment, and anguish.

48.    The actions of the Board have caused and continue to cause Hernandez substantial losses in earnings and other employment benefits.

49.    The Board did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring Hernandez from an improper and evil motive amounting to malice and in conscious disregard of Hernandez' rights.

WHEREFORE, Hernandez respectfully requests:

   a.    All wages and benefits Hernandez would have received but for the discrimination;

   b.    Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

   c.    Punitive damages in an amount to be determined at trial;

   d.    Reinstatement to her original position as Parent Facilitator;

   e.    Removal of the termination documentation from her employee file;

   f.    Prejudgment interest on any award;

   g.    Reasonable attorneys' fees, costs, and litigation expenses; and

   h.    Such other relief as the Court deems just and proper.

### COUNT II
### (Title VII Violation against the Board – Hostile Work Environment)

50.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 49 above.

51.    Hernandez, as a Hispanic woman, belongs to a protected class.

52.    Hernandez was qualified for the position of Parent Facilitator and, in fact, held that position for several years.

53.    The actions of the Board, as described herein, are unlawful employment practices in that they likely have the effect and did have the effect of discriminating against, depriving, and tending to deprive equal employment to, and otherwise adversely affecting Hernandez because of her race and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* The Board's actions were motivated by discriminatory intent.

54.    Furthermore, the Board subjected Hernandez to unwelcome harassment based on race. This harassment affected a term, condition, or privilege of Hernandez' employment. The Board knew or should have known of the harassment and failed to take appropriate remedial action.

55.    The Board had direct knowledge of the racially harassing conduct described herein. The Board knew that the incidents of racially harassing conduct were unwelcome to Hernandez. The Board knew or should have known that these incidents were so pervasive and extreme that they affected and altered Hernandez' conditions of employment and created an offensive, intimidating, hostile, and abusive work environment that seriously affected her psychological well-being and ultimately led to her unlawful termination.

56.    The Board engaged in continuous and ongoing discriminatory acts against Hernandez from around March of 2005 until it subsequently fired Hernandez on or about July 25, 2006.

57.    The Board's actions caused and continue to cause Hernandez to suffer humiliation, embarrassment, and anguish.

58.    The actions of the Board have caused and continue to cause Hernandez substantial losses in earnings and other employment benefits.

59.    The Board did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring Hernandez from an improper and evil motive amounting to malice and in conscious disregard of Hernandez' rights.

WHEREFORE, Hernandez respectfully requests:

a.    All wages and benefits Hernandez would have received but for the discrimination;

b.    Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

c.    Punitive damages in an amount to be determined at trial;

d.    Reinstatement to her original position as Parent Facilitator;

e.    Removal of the termination documentation from her employee file;

f.    Prejudgment interest on any award;

g.    Reasonable attorneys' fees, costs, and litigation expenses; and

h.    Such other relief as the Court deems just and proper.

## COUNT III
### (Title VII Violation against the Board – Retaliation)

60.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 59 above.

61.    Hernandez, as a Hispanic woman, belongs to a protected class.

62.    Prior to her termination, Hernandez openly opposed the Board's unlawful employment practices.

63.    On October 5, 2005, Hernandez' attorney sent the Board a letter informing the Board that he had been retained by Hernandez with regard to claims against the Board arising from the Board's breach of Hernandez' employment contract and acts of discrimination based on her race, color, and national origin.

64.    On or about July 14, 2006, Hernandez filed a charge of discrimination against the Board with the EEOC.

65.     The Board knew that Hernandez openly opposed the Board's unlawful employment practices and that Hernandez planned to file (and ultimately did file) a charge of discrimination.

66.     As a result, the Board demoted and subsequently terminated Hernandez.

67.     There is a casual connection between Hernandez' open opposition to the Board's unlawful employment practices and planned EEOC charge and her subsequent demotion and termination.

68.     The actions of the Board, as described herein, are unlawful employment practices in that they likely have the effect and did have the effect of discriminating against, depriving, and tending to deprive equal employment to, and otherwise adversely affecting Hernandez because of her race and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* The Board's actions were motivated by discriminatory intent.

69.     The Board's actions caused and continue to cause Hernandez to suffer humiliation, embarrassment, and anguish.

70.     The actions of the Board have caused and continue to cause Hernandez substantial losses in earnings and other employment benefits.

71.     The Board did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring Hernandez from an improper and evil motive amounting to malice and in conscious disregard of Hernandez' rights.

WHEREFORE, Hernandez respectfully requests:

a.      All wages and benefits Hernandez would have received but for the discrimination;

b.      Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

c.      Punitive damages in an amount to be determined at trial;

d.    Reinstatement to her original position as Parent Facilitator;

e.    Removal of the termination documentation from her employee file;

f.    Prejudgment interest on any award;

g.    Reasonable attorneys' fees, costs, and litigation expenses; and

h.    Such other relief as the Court deems just and proper.

## COUNT IV
### (42 U.S.C. § 1981 Violation against the Board and Individual Defendants – Racial Discrimination)

72.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 71 above.

73.    Hernandez, as a Hispanic woman, belongs to a protected class.

74.    Hernandez was qualified for the position of Parent Facilitator and, in fact, held that position for several years.

75.    The actions of the Board and the Individual Defendants, as described herein, are unlawful employment practices in that they were intentional acts of discrimination against Hernandez because of her race, in violation of 42 U.S.C. § 1981.

76.    The Board's and the Individual Defendants' actions caused and continue to cause Hernandez to suffer humiliation, embarrassment, and anguish.

77.    The actions of the Board and the Individual Defendants have caused and continue to cause Hernandez substantial losses in earnings and other employment benefits.

78.    The Board and the Individual Defendants did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring Hernandez from an improper and evil motive amounting to malice and in conscious disregard of Hernandez' rights.

WHEREFORE, Hernandez respectfully requests:

a.    All wages and benefits Hernandez would have received but for the discrimination;

b.    Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

    c.     Punitive damages in an amount to be determined at trial;

    d.     Reinstatement to her original position as Parent Facilitator;

    e.     Removal of the termination documentation from her employee file;

    f.     Prejudgment interest on any award;

    g.     Reasonable attorneys' fees, costs, and litigation expenses; and

    h.     Such other relief as the Court deems just and proper.

## COUNT V
### (42 U.S.C. § 1981 Violation against the Board and Individual Defendants – Hostile Work Environment)

79.     Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 78 above.

80.     Hernandez, as a Hispanic woman, belongs to a protected class.

81.     Hernandez was qualified for the position of Parent Facilitator and, in fact, held that position for several years.

82.     The actions of the Board and the Individual Defendants, as described herein, are unlawful employment practices in that they were intentional acts of discrimination against Hernandez because of her race, in violation of 42 U.S.C. § 1981.

83.     The Board and the Individual Defendants subjected Hernandez to unwelcome harassment based on race.  This harassment affected a term, condition, or privilege of Hernandez' employment.  The Board and the Individual Defendants knew or should have known of the harassment and failed to take appropriate remedial action.

84.     The Board and the Individual Defendants had direct knowledge of the racially harassing conduct described herein.  The Board and the Individual Defendants knew that the incidents of racially harassing conduct were unwelcome to Hernandez.  The Board and the Individual Defendants knew or should have known that these incidents were so pervasive and extreme that they affected and altered Hernandez' conditions of employment and created an offensive, intimidating, hostile, and abusive work environment that seriously affected her psychological well-being and ultimately led to her unlawful termination.

85.    The Board's and the Individual Defendants' actions caused and continue to cause Hernandez to suffer humiliation, embarrassment, and anguish.

86.    The actions of the Board and the Individual Defendants have caused and continue to cause Hernandez substantial losses in earnings and other employment benefits.

87.    The Board and the Individual Defendants did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring Hernandez from an improper and evil motive amounting to malice and in conscious disregard of Hernandez' rights.

WHEREFORE, Hernandez respectfully requests:

a.    All wages and benefits Hernandez would have received but for the discrimination;

b.    Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

c.    Punitive damages in an amount to be determined at trial;

d.    Reinstatement to her original position as Parent Facilitator;

e.    Removal of the termination documentation from her employee file;

f.    Prejudgment interest on any award;

g.    Reasonable attorneys' fees, costs, and litigation expenses; and

h.    Such other relief as the Court deems just and proper.

### COUNT VI
**(42 U.S.C. § 1981 Violation against the Board and Individual Defendants – Retaliation)**

88.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 87 above.

89.    Hernandez, as a Hispanic woman, belongs to a protected class.

90.    Prior to her termination, Hernandez openly opposed the Board's unlawful employment practices.

91.    On October 5, 2005, Hernandez' attorney sent the Board a letter informing the Board that he had been retained by Hernandez with regard to claims against the Board arising

from the Board's breach of Hernandez' employment contract and acts of discrimination based on her race, color, and national origin.

92.    On or about July 14, 2006, Hernandez filed a charge of discrimination against the Board with the EEOC.

93.    The Board and the Individual Defendants knew that Hernandez openly opposed the Board's unlawful employment practices and that Hernandez planned to file (and ultimately did file) a charge of discrimination.

94.    As a result, the Board and the Individual Defendants demoted and subsequently terminated Hernandez.

95.    There is a casual connection between Hernandez' open opposition to the Board's unlawful employment practices and planned EEOC charge and her subsequent demotion and termination.

96.    The actions of the Board and the Individual Defendants, as described herein, are unlawful employment practices in that they were intentional acts of discrimination against Hernandez because of her race, in violation of 42 U.S.C. § 1981.

97.    The Board's and the Individual Defendants' actions caused and continue to cause Hernandez to suffer humiliation, embarrassment, and anguish.

98.    The actions of the Board and the Individual Defendants have caused and continue to cause Hernandez substantial losses in earnings and other employment benefits.

99.    The Board and the Individual Defendants did the acts herein alleged maliciously, fraudulently, and oppressively and with wrongful intention of injuring Hernandez from an improper and evil motive amounting to malice and in conscious disregard of Hernandez' rights.

WHEREFORE, Hernandez respectfully requests:

     a.    All wages and benefits Hernandez would have received but for the discrimination;

b.      Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

c.      Punitive damages in an amount to be determined at trial;

d.      Reinstatement to her original position as Parent Facilitator;

e.      Removal of the termination documentation from her employee file;

f.      Prejudgment interest on any award;

g.      Reasonable attorneys' fees, costs, and litigation expenses; and

h.      Such other relief as the Court deems just and proper.

## COUNT VII
### (42 U.S.C. § 1983 Violation against the Board and Individual Defendants – Equal Protection – Racial Discrimination)

100.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 99 above.

101.    Hernandez, as a Hispanic woman, belongs to a protected class.

102.    Hernandez was qualified for the position of Parent Facilitator and, in fact, held that position for several years.

103.    The actions of the Board and the Individual Defendants, as described herein, are unlawful employment practices in that they were intentional acts of discrimination against Hernandez because of her race.

104.    The actions of the Board and the Individual Defendants reflect a policy and/or pattern and practice of official conduct because the Board consists of and the Individual Defendants were high-ranking, supervisory officials within the District who were responsible for all decisions regarding the operations of the District, and such individuals knew of, tolerated, participated in, and refused to prevent future harassment, discrimination, and harm.

105.    The actions of the Board and the Individual Defendants against Hernandez violated her equal protection right to be free from racial discrimination under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

106.    The Board and Individual Defendants acted under color of state law when they deprived Hernandez of her federal rights.

107.    The actions of the Board and the Individual Defendants of intentionally engaging in and conducting race discrimination against Hernandez caused her great mental anguish, humiliation, emotional distress, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Hernandez respectfully requests:

a.    All wages and benefits Hernandez would have received but for the discrimination;

b.    Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

c.    Punitive damages in an amount to be determined at trial;

d.    Reinstatement to her original position as Parent Facilitator;

e.    Removal of the termination documentation from her employee file;

f.    Prejudgment interest on any award;

g.    Reasonable attorneys' fees, costs, and litigation expenses; and

h.    Such other relief as the Court deems just and proper.

## COUNT VIII
**(42 U.S.C. § 1983 Violation against the Board and Individual Defendants – Equal Protection – Hostile Work Environment)**

108.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 107 above.

109.    Hernandez, as a Hispanic woman, belongs to a protected class.

110.    Hernandez was qualified for the position of Parent Facilitator and, in fact, held that position for several years.

111.    The actions of the Board and the Individual Defendants, as described herein, are unlawful employment practices in that they were intentional acts of discrimination against Hernandez because of her race.

112.    The Board and the Individual Defendants subjected Hernandez to unwelcome harassment based on race.  This harassment affected a term, condition or privilege of Hernandez' employment.  The Board and the Individual Defendants knew or should have known of the harassment and failed to take appropriate remedial action.

113.    The Board and the Individual Defendants had direct knowledge of the racially harassing conduct described herein.  The Board and the Individual Defendants knew that the incidents of racially harassing conduct were unwelcome to Hernandez.  The Board and the Individual Defendants knew or should have known that these incidents were so pervasive and extreme that they affected and altered Hernandez' conditions of employment and created an offensive, intimidating, hostile, and abusive work environment that seriously affected her psychological well-being and ultimately led to her unlawful termination.

114.    The actions of the Board and the Individual Defendants reflect a policy and/or pattern and practice of official conduct because the Board consists of and the Individual Defendants were high-ranking, supervisory officials within the District who were responsible for all decisions regarding the operations of the District, and such individuals knew of, tolerated, participated in, and refused to prevent future harassment, discrimination, and harm.

115.    The actions of the Board and the Individual Defendants against Hernandez violated her equal protection right to be free from racial discrimination under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

116.    The Board and Individual Defendants acted under color of state law when they deprived Hernandez of her federal rights.

117.    The actions of the Board and the Individual Defendants of intentionally engaging in and conducting race discrimination against Hernandez caused her great mental anguish, humiliation, emotional distress, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Hernandez respectfully requests:

    a.    All wages and benefits Hernandez would have received but for the discrimination;

    b.    Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

    c.    Punitive damages in an amount to be determined at trial;

    d.    Reinstatement to her original position as Parent Facilitator;

    e.    Removal of the termination documentation from her employee file;

    f.    Prejudgment interest on any award;

    g.    Reasonable attorneys' fees, costs, and litigation expenses; and

    h.    Such other relief as the Court deems just and proper.

## COUNT IX
### (42 U.S.C. § 1983 Violation against the Board and Individual Defendants – Equal Protection – Retaliation)

118.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 117 above.

119.    Hernandez, as a Hispanic woman, belongs to a protected class.

120.    Prior to her termination, Hernandez openly opposed the Board's unlawful employment practices.

121.    On October 5, 2005, Hernandez' attorney sent the Board a letter informing the Board that he had been retained by Hernandez with regard to claims against the Board arising from the Board's breach of Hernandez' employment contract and acts of discrimination based on her race, color, and national origin.

122.    On or about July 14, 2006, Hernandez filed a charge of discrimination against the Board with the EEOC.

123.    The Board and the Individual Defendants knew that Hernandez openly opposed the Board's unlawful employment practices and that Hernandez planned to file (and ultimately did file) a charge of discrimination.

124.    As a result, the Board and the Individual Defendants demoted and subsequently terminated Hernandez.

125.    There is a casual connection between Hernandez' open opposition to the Board's unlawful employment practices and planned EEOC charge and her subsequent demotion and termination.

126.    The actions of the Board and the Individual Defendants, as described herein, are unlawful employment practices in that they were intentional acts of discrimination against Hernandez because of her race.

127.    The actions of the Board and the Individual Defendants reflect a policy and/or pattern and practice of official conduct because the Board consists of and the Individual Defendants were high-ranking, supervisory officials within the District who were responsible for all decisions regarding the operations of the District, and such individuals knew of, tolerated, participated in, and refused to prevent future harassment, discrimination, and harm.

128.    The actions of the Board and the Individual Defendants against Hernandez violated her equal protection right to be free from racial discrimination under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

129.    The Board and Individual Defendants acted under color of state law when they deprived Hernandez of her federal rights.

130.    The actions of the Board and the Individual Defendants of intentionally engaging in and conducting race discrimination against Hernandez caused her great mental anguish, humiliation, emotional distress, lost wages and benefits, future pecuniary losses, and other consequential damages.

WHEREFORE, Hernandez respectfully requests:

      a.     All wages and benefits Hernandez would have received but for the discrimination;

23

     b.    Compensatory damages in an amount to be determined at trial to compensate Hernandez for the humiliation, anguish, and emotional distress caused by the Board's conduct;

     c.    Punitive damages in an amount to be determined at trial;

     d.    Reinstatement to her original position as Parent Facilitator;

     e.    Removal of the termination documentation from her employee file;

     f.    Prejudgment interest on any award;

     g.    Reasonable attorneys' fees, costs, and litigation expenses; and

     h.    Such other relief as the Court deems just and proper.

## <u>COUNT X</u>
### (Breach of Contract against the Board)

131.    Hernandez adopts and incorporates by reference as if fully set forth herein each of her allegations set forth in paragraphs 1 through 130 above.

132.    On or about August 11, 2005, the Board and Hernandez entered into a valid and binding employment agreement.  *See* Exhibit E.

133.    Hernandez performed all of her obligations under the employment contract.

134.    The Board breached the employment contract by unilaterally revoking the contract and demoting Hernandez to a different position with reduced duties, responsibilities, and pay.

135.    The Board's actions damaged Hernandez because, *inter alia*, the demotion stigmatized her and caused her to earn less money than she was contractually entitled to earn.

WHEREFORE, Hernandez respectfully requests:

     a.    An award of damages the amount of which shall be determined at trial; and

     b.    Such other relief as the Court deems just and proper.

## **JURY DEMAND**

Hernandez demands a jury on all issues triable at law.

September 2, 2008

                                        Respectfully submitted,


                                        ___s/Andrew D. Shapiro_____
                                        One of the Attorneys for
                                        Plaintiff Minerva Hernandez



Ira J. Belcove (#06196312)
Andrew D. Shapiro (#6273040)
Butler Rubin Saltarelli & Boyd LLP
70 West Madison St.
Suite 1800
Chicago, IL 60602
(312) 444-9660

# Exhibit A

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To:    **Ms. Minerva Hernandez**
8518 Ridge Stone Street
San Antonio, TX  78251

From:    **Equal Employment Opportunity Commission**
**Cleveland Field Office**
AJCFB - Suite 3001
**1240 East 9th Street**
Cleveland, OH 44199

☐    *On behalf of person(s) aggrieved whose identity is*
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2006-08401 | **Legal Unit Duty Officer** | **(216) 522-7445** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐    Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐    The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐    Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒    The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐    The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐    Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

*Daniel J. Cabot (ED)*

**Daniel J. Cabot,**
**Field Director**

MAR 0 5 2008

*(Date Mailed)*

cc:    **Waukegan Community Unit School District 60**
c/o Kathryn S. Vander Broek
Hinshaw & Culbertson LLP
**222 North LaSalle Street**
**Suite 300**
**Chicago, IL  60601**

# Exhibit B

## DISMISSAL AND NOTICE OF RIGHTS

| To: Ms. Minerva Hernandez<br>8518 Ridge Stone Street<br>San Antonio, TX 78251 | From: Equal Employment Opportunity Commission<br>Cleveland Field Office<br>AJCFB - Suite 3001<br>1240 East 9th Street<br>Cleveland, OH 44199 |
|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2007-04849 | Legal Unit Duty Officer | (216) 522-7445 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____
Daniel J. Cabot,
**Field Director**

MAR 0 5 2008
*(Date Mailed)*

Enclosures(s)

cc: Waukegan Community Unit School District 60
c/o Kathryn S. Vander Broek
Hinshaw & Culbertson LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601

Exhibit C

# Waukegan Public Schools

### Community Unit School District No. 60, Lake County, Illinois

**RICHARD B. OLSON, Ed.D.**
Superintendent of Schools

LINCOLN CENTER
FOR EDUCATIONAL SERVICES
1201 NORTH SHERIDAN ROAD
WAUKEGAN, ILLINOIS  60085-2099
847-336-3100
FAX 847-360-5634

July 6, 2005

Ms. Minerva Hernandez
2104 Ash Street
Waukegan, IL  60087

Dear Ms. Hernandez:

Pursuant to the direction of the Board of Education of Waukegan Community Unit School District No. 60 taken in open session on June 28, 2005, this is to inform you that your position at the Parent Information Center (PISC) is being reduced due to a decision to discontinue the number of personnel providing community services through the PISC during School Year 2005-2006.   This action is being taken pursuant to 105 ILCS 5/10-23.5, and your dismissal will be effective August 8, 2005.  This dismissal is considered honorable.

The Board has received numerous complaints and threats of litigation regarding the current Parent Information Support Center site's lack of accessibility for handicapped individuals.  In the short run, this has necessitated immediate closure.  In addition, the Board has directed that the PISC, its mission and programs be evaluated and reorganized.  There is a continuing need to provide information and support to Waukegan school families, but it it unclear to the Board that the PISC, as presently constituted, is the best intermediary and methodology for accomplishing that objective.  Pending completion of that analysis, PISC operations will be discontinued indefinitely.

If you wish to be heard concerning this decision regarding your employment before it is implemented, then you have the right to a pre-dismissal due process hearing.  If you wish, you should advise my office of your hearing request, and an opportunity will be granted for you to appear before the Board in closed session at the Board's meeting on July 19, 2005.

In addition, you may have reemployment and transfer rights.   You are invited to review your specific circumstances with Mr. Fredrick Howard, Associate Superintendent for Human Resources, at your earliest opportunity.  Mr. Howard and his staff are prepared to explore the range of available positions within the District in your category of position, for which you have the requisite qualifications and seniority.

Sincerely,

*Richard B. Olson*

Richard B. Olson
Superintendent of Schools.

RBO/sc

cc: Dr. Carlson    Mr. Howard
    Mr. Luosa      Mr. Morris

Exhibit D



# Waukegan Public Schools

Community Unit School District No. 60, Lake County, Illinois

**RICHARD B. OLSON, Ed.D.**
Superintendent of Schools

LINCOLN CENTER
FOR EDUCATIONAL SERVICES
1201 NORTH SHERIDAN ROAD
WAUKEGAN, ILLINOIS 60085-2099
847-336-3100
FAX 847-360-5634

July 15, 2005

Ms. Minerva Hernandez
2104 Ash Street
Waukegan, IL 60087

Dear Ms. Hernandez:

Reference my letter dated July 6, 2005 concerning your dismissal due to the decision to reduce the staff of the Parent Information Center (PISC).

That letter is hereby revoked as you were not an employee of the PISC, but an employee of the English Language Learners Department.

Sincerely,

Richard B. Olson
Superintendent of Schools.

RBO/sc

cc: Dr. Carlson      Mr. Howard
    Mr. Luosa       Mr. Morris

# Exhibit E

# Waukegan Public Schools

Community Unit School District No. 60, Lake County, Illinois

**RICHARD B. OLSON, Ed.D.**
Superintendent of Schools

**FREDRICK C. HOWARD**
Associate Superintendent
for Human Resources

LINCOLN CENTER
FOR EDUCATIONAL SERVICES
1201 NORTH SHERIDAN ROAD
WAUKEGAN, ILLINOIS  60085-2099
Phone: 847.360.5404
Fax: 847.360.5653

WAUKEGAN PUBLIC SCHOOLS
HUMAN RESOURCES DEPARTMENT
1201 N. SHERIDAN ROAD
WAUKEGAN, IL   60085

MISCELLANEOUS NON-CERTIFIED CONTRACT

AUG 1 6 2005

TO:   Ms. Minerva Hernandez

You are hereby notified that your base salary for the school contract year 2005-2006 will be $37,198.

Your working year will be  42  weeks.  The beginning and ending dates will be established by the Superintendent of School and/or his designated representative.

Your vacation schedule coincides with that of a 10-month office worker as defined by the office workers contract.

DATE:  August 11, 2005          SIGNED: _____
                                                         (Superintendent or designee)

EMPLOYEE please sign below and return one signed copy to the Human Resources Office.  Keep one copy for your files.

SIGNED: _____
                     (Employee)

# Waukegan Public Schools

Community Unit School District No. 60, Lake County, Illinois

**RICHARD B. OLSON, Ed.D.**
Superintendent of Schools

**FREDRICK C. HOWARD**
Associate Superintendent
for Human Resources

LINCOLN CENTER
FOR EDUCATIONAL SERVICES
1201 NORTH SHERIDAN ROAD
WAUKEGAN, ILLINOIS 60085-2099
Phone: 847.360.5404
Fax: 847.360.5653

## FRINGE  BENEFITS
## MISCELLANEOUS  NON-CERTIFIED  STAFF

The following fringe benefits are applicable:

a.    Term life insurance in the amount of $50,000.

b.    Payment of a $250 stipend for eight or more but not twelve years of service.
Payment of a $500 stipend for twelve or more but not fifteen years of service.
Payment of a $1,000 stipend for fifteen or more years of service.

c.    Payment of $400 toward dependent medical insurance.

d.    Compensatory time may be granted by the immediate supervisor without
clearance from the Human Resources Office.

e.    The vacation allotment for new employees in this group will be prorated at the
rate of 1.67 days per month worked, up to a maximum of 20 days per year.  Vacation is
non-accruable and must be used within the year it is earned.  Exceptions may be
granted by the Superintendent upon written request.

f.    Entitled to fringe benefits.

g.    Other fringe benefits provided for office personnel by the Board of Education,
not listed above, shall accrue on the same basis to administrative cabinet level
secretaries.

# Exhibit F



# Waukegan Public Schools

### Community Unit School District No. 60, Lake County, Illinois

**RICHARD B. OLSON, Ed.D.**
Superintendent of Schools

**FREDRICK C. HOWARD**
Associate Superintendent
for Human Resources

LINCOLN CENTER
FOR EDUCATIONAL SERVICES
1201 NORTH SHERIDAN ROAD
WAUKEGAN, ILLINOIS 60085-2099
Phone: 847.360.5404
Fax: 847.360.5653

August 25, 2005

Ms. Minerva Hernandez
2104 Ash Street
Waukegan, IL 60087

Dear Ms. Hernandez:

This letter is to inform you that your contract dated August 11, 2005, is hereby revoked. This office has been informed by Dr. Karen Carlson, Associate Superintendent Specialized Instructional Programs, that your position of Parent Facilitator, in the English Language Learners Program, was discontinued on August 8, 2005, with the closure of the Parent Information Support Center. Your salary was based upon your being assigned in that position.

You have been reassigned to the position of Bilingual Teacher Assistant at Abbott Middle School with a salary that is in accordance with the Paraprofessional Union/Board of Education Contract. You are eligible to apply for other positions within the District.

You are invited to review your specific circumstances with my office, at your earliest opportunity. We are prepared to explore the range of available positions within the District in your category of position, for which you have the requisite qualifications.

Sincerely,

Fredrick C. Howard
Associate Superintendent for
Human Resources

FCH/sc

cc: Dr. Olson
Dr. Carlson
Mr. Luosa
Mr. Morris

W.P.S. DISTRICT  60

BILINGUAL TEACHER
ASSISTANT I & II

### JOB DESCRIPTION

**ORGANIZATIONAL
RELATIONSHIP:**

Directly responsible to the Director of Language Programs and/or
the Department of Special Education or designee, the classroom
teacher (s) with whom he/she works, and the building principal.

**GENERAL DUTIES:**

A bilingual teacher assistant shall be employed to assist in the
instruction under the direct supervision and control of a fully
certificated teacher. Areas of instruction requiring such supervised
assistance shall include, though are not necessarily limited to,
classrooms, laboratories, shops, playgrounds, organized physical
education periods, libraries (if utilized as instructional settings), and
such other educational settings where instructional judgment
requires the supervision of a fully certificated teacher.

I.  Beginning July 1, 1974, all bilingual teacher assistantsshall
be responsible for procuring an assurance of approval,
attesting to their satisfactory fulfillment of qualifications,
from the Illinois State Teacher Certification Board.
Otherwise, that person will be classified as a teacher
assistant.

II.  A teacher assistant shall be responsible to that portion
(Section 24-25) of the School Code of Illinois, requiring
physical fitness and freedom from communicable disease
and the State requiring annual evidence of freedom from
tuberculosis.

III.  The assistant shall be utilized to assist in areas of academic
instruction in the following ways:

A. Preparing materials for various levels of instruction
under the continuous management of the teacher.

B. Assisting in instruction under the direction of the teacher.

C. Distribute programmed instructional materials and help
pupils complete units.

D. Provide follow-up activities in the instructional areas as
directed by the teacher.

E. Perform other related instructional tasks under the direct
management of the teacher.

Page 2

F. Translate and/or interpret for students assigned to them.

IV.    The assistant shall be utilized to assist in the areas of non-academic instruction that only pertain to the students of the classroom to which he/she is assigned, such as:

        maintaining order
        clerical work
        housekeeping duties
        operation of visual equipment
        bulletin board displays
        lunchroom, hall and playground duties
        helping students board buses

V.    Follow all district and building rules, regulations and procedures.

VI.    The assistant shall conduct her/himself in a manner consistent with the generally accepted standards of behavior expected of teachers in the district. For example, privileged information about pupils shall be kept confidential.

VII.    Report all personal absences to the building principal and/or the Department of Language Programs/Special Education Department.

February 1987, Revised June 1997